JOHNSON, President, &c. vs. MCINTOSH, impleaded with Barker.

The provision in the 399th section of the code, that a party shall not be examined as a witness unless the adverse party or person in interest is living, does not exclude a party from being a witness when the opposite party is a corporation.

Contemporaneous parol stipulations, contradicting or varying the legal effect of written contracts, cannot be received in evidence.

A defendant, on a trial before a referee, set up a defense which, though valid, was not within the issue presented by the pleadings, and was not a mere variance in some particular but in the entire scope and meaning of the defense. No amendment was asked for, or made; and no objection to the evidence was made, until the close of the trial, the parties consenting that all objections to the evidence might be reserved until that time. At the close of the trial, the plaintiff objected to the evidence, as not being within the issue. *Held* that the objection was valid, and should have been allowed. BACON, J. dissented.

*Held also*, that the erroneous ruling of the referee, in receiving the evidence, was not cured by a subsequent order of the court, allowing an amendment of the answer

*Held further*, that the order allowing the defendant to amend his answer was erroneous.

APPEAL by the plaintiff from a judgment of the special term, on a report of a referee in favor of the defendant. The action was brought by the plaintiff, as president of the Ontario Bank, on a promissory note made by Henry L. Barker, dated June 1, 1857, for $427 and interest, at three months, payable at the Ontario Bank to the order of Andrew J. McIntosh, and indorsed by him. The action was against both maker and indorser. The answer of McIntosh set up several defenses: 1. A general denial of indebtedness on the note, &c. 2. This part of the answer alleged that on the 7th of January, 1857, the Ontario Bank claimed a balance due from Barker, as overdrawn by him, of $427, but which was denied by Barker. But on that day Barker, to pay said alleged overdraft, made his note for $427, and delivered it to said bank; that McIntosh indorsed said note at the request of said bank, "under an express agreement" made with said bank by Lynch, its cashier and authorized managing agent, with said McIn-

tosh, that he, McIntosh, "should not be liable on said note as indorser, or any note given to renew the same, unless he should realize from a chattel mortgage," made by Barker to McIntosh on said 7th January, 1857, to secure payment of said note and another note made by Barker and indorsed by McIntosh, "sufficient" to pay the last mentioned note, and then what might be realized on said mortgage should be paid on the above note for $427, dated January 27, 1857, "so given to said bank as aforesaid." It was then alleged that the note in suit, dated June 1, 1857, was given in renewal of said note of January 7, 1857, and that McIntosh had not realized from said mortgage any thing to pay said note of $427. Then follow allegations of an error in the account of Barker with the bank of $275, and that he did not on the 7th January, 1857, owe the bank any thing, nor was there any consideration for the note. The cause was also at issue as to Barker, and was referred, October, 1857, to a referee. Trial in September and October, 1858. On the trial the note of 7th January was proved to be a note at four months, payable to the order of McIntosh, and indorsed by him. The note in suit was also proved; it was at three months, payable to the order of McIntosh, and indorsed by him. McIntosh was offered as a witness for himself, and objected to as incompetent, on the ground that the real plaintiff, the Ontario Bank, was a corporation. Objection overruled, and the plaintiff's counsel excepted. McIntosh was then sworn and testified; it being expressly agreed that the plaintiff might at the close of the case specify his ojections to the evidence. McIntosh was examined on two different days. On the first day he swore to an arrangement between himself and Lynch, the cashier; that he, McIntosh, thereupon obtained of Barker the note of January 7. "I was acting as agent of Barker and the bank. I indorsed the note upon an agreement with Lynch that I should not be liable as indorser, and the note should be left with me for my protection and as the property of the bank." But a week or so after this note was made, the witness delivered it to Lynch. This note

fell due May 10, 1857, and early in June the note in suit was made, to renew the first one, "and delivered to Mr. Lynch under the same terms." There was no written agreement as to this matter. On a second examination, on another day, McIntosh testified that he delivered to Lynch the note of 7th January, "as the property of the bank, as I held it, and for safe keeping." Egan, a witness for the plaintiff, testified that both notes were discounted by the Ontario Bank and proceeds credited to Barker. The cause was summed up, and the plaintiff's counsel stated his objections to the evidence of McIntosh. 1. That no such defense as the witness attempted to prove, was set up in his answer. 2. That to admit such evidence as that given by McIntosh would alter, contradict and nullify the written engagement of the indorser by parol evidence. 3. That Lynch, as cashier, had no power to make such an agreement as the witness stated. 4. That there was a good consideration for these notes. 5. That the evidence that McIntosh was agent was inadmissible, as the indorsement was as principal and not as agent.

On the 9th of October, 1858, the referee reported against Barker for the amount of the note, and in favor of McIntosh, finding the facts and conclusions of law. The defendant, in November, 1858, moved to amend his answer, which was opposed, but the motion was granted at a special term, November 30. The answer was accordingly amended. From said order the plaintiff appealed to the general term, where the appeal was dismissed at January term, 1859. Judgment was entered for McIntosh, January 21, 1859, and on the 4th of February, 1859, the plaintiff's attorney filed exceptions and served the same and a case.

*A. M. Beardsley,* for the appellant.

*M. H. Throop,* for the defendant.

PRATT, J.   I do not think that the objection to the examination of the defendant McIntosh, as a witness on his own behalf, was well taken.   The provision of the 399th section of the code, that a party shall not be examined as a witness unless the adverse party or person in interest is living, does not exclude a party from being a witness when the opposite party is a corporation.

1st. The general rule is in favor of admission.   The cases of exclusion are exceptions.   To exclude, therefore, a party to a suit from the privilege of testifying in his own behalf, it must appear that the opposite party or person in interest is dead, or that the opposite party is an assignee, administrator, executor or legal representative of a deceased person.   A corporation is neither of these.   For while it cannot be said to be alive in the sense applied to natural persons, it cannot be said to be dead.   It clearly has an existence.   This restricting clause, therefore, cannot be applied to corporations.

2d. As corporations must necessarily act through living agencies, the reasons upon which this restriction was based do not apply to them, especially so long as the agents through whom the contract in controversy was made are alive.   They would be proper and competent witnesses, and the considerations, therefore, which would exclude a party in the case of the death of the other party to the transaction, do not apply at all to the case of a corporation.

Indeed it has often, under the common law rule, been felt as a hardship, that the officers and agents of corporations who manifested all the feelings and interest of parties to the record should be allowed to testify and give their own version of the transaction, while the mouth of the other party, with no more apparent feeling and interest, should be closed in silence. The authors of the code manifestly did not design to perpetuate this evil.

But upon the other points in the case, I think there should be a new trial.   The complaint sets out the execution of the

Johnson *v.* McIntosh.

note by one Barker, the indorsement by the defendant, delivery to the bank, and demand and notice. The answer, which formed the issue upon which the action was tried, admits all these averments, and alleges circumstances under which the indorsement was made, showing a sufficient consideration, but sets up as a defense a contemporaneous parol agreement by which the defendant was not to be made liable upon his indorsement, unless he should realize a certain amount from a chattel mortgage given by Barker to him, to secure him against his liability upon the indorsement. In other words, the defense set up in the answer was a parol stipulation, contemporaneous with the indorsement, that the latter should not create the liability which it purported upon its face to create, but that it was to take effect as an indorsement upon a certain condition which had not been performed. It is not necessary to cite authorities to show that contemporaneous parol stipulations, contradicting or varying the legal effect of written contracts, cannot be received in evidence. The answer, therefore, showed no defense to the complaint.

But the defendant upon the trial claimed, and so the referee has found, that there was in fact no consideration for the indorsement by the defendant; that the defendant in the whole transaction acted as the agent of the bank, and therefore indorsed the note merely to transfer the legal title to the bank. This, if true, was undoubtedly a good defense to the action, but was it proper to be admitted under the pleadings? It was clearly not within the issue presented by the pleadings. And it was not a mere variance in some particular, but in the entire scope and meaning of the defense. If the objection had been interposed to the evidence as it was offered, the referee, if he thought it not within the issue, might undoubtedly have allowed an amendment of the answer upon such terms as he deemed proper. But on the other hand, if the trial had proceeded upon the amended answer, the plaintiff, for aught is known, might have called the cashier and other witnesses

to disprove this defense.   But no amendment was asked for, or made.   The parties on both sides seemed to consent that all objections to the evidence might be reserved to be made at the close of the trial.   The objection to this defense was then made on the part of the plaintiff.   No suggestion in regard to an amendment of the answer was made on behalf of the defendant.   It seems to me, therefore, that the question presented is this, and this alone — was the objection a valid one upon the pleadings as they then stood?   As I have already suggested, it is not a variance merely in some particular, but it is an entire change of the defense, and was therefore, upon the issue as it then was, clearly incompetent.   The defense set up was unproved, not in some particular, but in its entire scope and meaning.   And the consideration that if the answer set up had been proved it would have constituted no defense, cannot make the case any better for the defendant.

Nor is the case cleared of the difficulty by the subsequent order giving leave to amend the answer.   That order was probably granted upon the assumption that the rulings of the referee were correct.   And if the judgment be allowed to stand, the order was clearly proper.   And this brings us right back to the question, whether the ruling of the referee was right or not.   If wrong, it surely should not be deemed cured by the order allowing the amendment.   It would be exceedingly dangerous to allow a party not only to prove a defense upon the trial which was not hinted at in his answer, but to contradict facts which he had admitted by his pleadings, and then, after a verdict or decision of the referee in his favor, to allow him to make a new answer to suit the proof.   This would be carrying the privilege of amendment a little too far.

The order was therefore also erroneous and should be reversed, without prejudice to the right of the defendant to move to amend his answer.

Upon the whole, I think the exceptions to the report

of the referee well taken, and that the judgment should be reversed.

W. F. ALLEN and MULLIN, Justices, concurred.

BACON, J. dissented.

[ONONDAGA GENERAL TERM, April 5, 1859. *Pratt, Bacon, W. F. Allen* and *Mullin,* Justices.]