## New York Marine Court.

### Trial Term—November, 1878.

### THE BULL'S HEAD BANK *against* HERMAN KOEHLER, ET AL.

**Promissory Note. Oral contemporaneous agreement.**—Proof of an oral contemporaneous agreement cannot be received for the purpose of altering the terms or legal effect of a negotiable instrument, but it may be received where it establishes an independent contract not inconsistent with the writing.

The various cases presenting these questions reviewed, and the line which distinguishes the two cases drawn.

Motion for a new trial upon the minutes.

McADAM, J.—The plaintiffs sue upon the following negotiable instrument.

"$900.00.        NEW YORK, August 29, 1877.

" Four months after date, I promise to pay to the order of myself, nine hundred dollars, at the Bull's Head Bank. Value received.

" HERMAN KOEHLER.

Indorsed—" HERMAN KOEHLER,
                DAVID M. KOEHLER,
                JOSEPH M. KOEHLER."

The action is against the maker and indorsers, all of whom defend. The defense is that the note was given to the plaintiff pursuant to an oral agreement made on March 3. 1876, whereby the defendant, Joseph M.

Koehler (who was then largely indebted to the plaintiff) was to give the note of Herman Koehler, for $900, indorsed by him, the said Joseph M., and by David M. Koehler, and the plaintiff, in consideration thereof, was to accept a payment of $300 and interest on the note when it matured, and a renewed note at four months for the balance, on a like understanding, upon receiving which the note in suit was to be surrendered ; that upon the maturity of said note the defendants tendered the cash payment of $300 and the renewed note ; that the plaintiff declined to accept the offer and refused to surrender the old note.

Upon the trial two objections were urged against this defense. *First.* That the agreement alleged, not being in writing, could not be proved without violating the elementary rule of law that parol evidence is inadmissible to alter or vary the terms or legal effect of a negotiable instrument. *Second.* That the alleged tender had not been kept good by a deposit in court and was therefore unavailing to the defendants, even if the contemporaneous agreement alleged had been properly proved and was of binding force in law.

The court, upon the trial, sustained these objections, and held, *as to the first proposition*, that the oral agreement alleged (for it was conceded on the trial to be oral) could not be proved, as the admission of such proofs would allow the written contract to be altered and varied, both in its terms and legal effect, by oral testimony, and thus permit the elementary rule of evidence, before stated, to be violated.

The correctness of this ruling will be first considered.

Both sides admit that, in general, parol evidence is inadmissible to contradict or vary a written instrument, and that where parties have reduced their agreement to writing, the terms of the writing, if clear and unambiguous, are the best evidence of what they intended,

and that the writing cannot be impeached by parol evidence tending to show that something different was designed, and that under this rule a written instrument can no more be varied or contradicted, in respect to its legal effect, than it can be in respect to its express terms.

The defendants claim, however, that the agreement alleged by them falls within a class of cases which have been held to be exceptions to the general rule before stated ; and the defendants cite, to sustain their position : Pechner v. Phenix Ins. Co., 65 *N. Y.* 196 ; Easterly v. Barber, 66 *Id.* 433 ; Butterman v. Pierce, 3 *Hill*, 171 ; Hutchins v. Hebbard, 34 *N. Y.* 24 ; Hope v. Balen, 58 *Id.* 380 ; Messmore v. New York Shot & Lead Co., 40 *Id.* 422 ; White's Bank of Buffalo v. Myles, *Alb. L. J.*, June 1, 1878 ; Bookstaver v. Janes, 60 *N. Y.* 146, 151 ; Johnson v. Hathorn, 3 *Keyes*, 126, 133 ; Western New York Ins. Co. v. Clinton, 66 *N. Y.* 326, 331 ; 2 *Parsons on Contr.* 553 ; Barker v. Bradley, 42 *N. Y.* 316 ; Bowen v. Bell, 20 *Johns.* 340 ; McCullough v. Girard, 4 *Wash. C. Ct.* 289 ; Rennard v. Sampson, 12 *N. Y.* 561 ; Thomas v. Dickinson, 2 *Kern.* 364 ; Benton v. Mastin, 52 *N. Y.* 570, 574.

This array of authorities looks formidable on a brief, but an examination of the cases shows that they do not sustain the position urged by the defendants.

Peckner v. Phenix Ins. Co. (65 *N. Y.* 196), turned upon a question of waiver, and the court said (p. 207) : "As a result of all the cases and of sound principle, I think it is clear that a condition required by a written instrument, not under seal, that an act be performed, or evidenced by a statement in writing, may be waived by parol, and that, from necessity, the acts going to establish waiver may be shown by parol evidence ;" and further on the court says : "The principle does

not admit oral testimony to vary or contradict that which is in writing."

Easterly *v.* Barber (66 *N. Y.* 433), merely reaffirms what was held in Barry *v.* Ransom (12 *N. Y.* 462), that an agreement made between sureties prior to or contemporaneously with their executing a written obligation as sureties, by which one promises to indemnify the other from loss, does not contradict or vary the terms or legal effect of the written agreement, and that in an action between them, it may be proved by parol evidence. The court (66 *N. Y.* 436), in referring to 12 *N. Y.* 462, continue: "It was said by Denio, J., in his opinion, that an agreement among the sureties, arranging their eventful liabilities among themselves in a manner different from what the law would prescribe, in the absence of an express agreement, would not contradict any of the terms of the bond. It was also held, that the engagement among themselves had no necessary place in the instrument between them and the other contracting parties. The case cited referred to a joint and several bond, where the obligors were equally liable upon its face. No reason exists, however, why the same principle is not applicable to notes and bills of exchange. The terms of the contract contained in instruments of this character, which are within its scope to define and regulate, *cannot be changed by parol;* but the undertaking between the indorsers is a distinct and separate subject, an *outside* matter, which may be properly proved independent of and without any regard to the instrument itself."

Batterman *v.* Pierce (3 *Hill,* 171), was an action on a promissory note made by the defendant, and given by him to the plaintiff, on the sale of a lot of standing wood. It appeared that, at the time of the sale, the plaintiff agreed that the purchaser was to have two seasons within which he might cut and remove the

wood, with a guaranty from the plaintiff that if the
wood was in the meantime destroyed by fire, while the
plaintiff was burning his fallow on a lot adjoining (an
event of which the parties seemed to be apprehensive)
that the plaintiff would be answerable for all the
damages which might follow. The defendant pleaded
the guaranty as a defense or recoupment to the note,
and the court (p. 175) said : "Here there were mutual
stipulations between the parties, all made at the
same time, and relating to the same subject-matter;
and there can be no difference in principle, whether
the whole transaction is embodied in one written in-
strument setting forth the cross obligations of both
parties, or whether it takes the form of a separate and
distinct undertaking by each party." After the evi-
dence relating to the guaranty had been received in
evidence, the trial judge struck it out, on the ground
that it constituted no defense or answer to an action
on the note. The plaintiff had a verdict, which was
set aside upon appeal, on the ground that the guaranty
might be proved by oral testimony, and that "for the
purpose of avoiding circuity, or the multiplication of
actions, and doing complete justice to both parties,
they are allowed and compelled—if the defendant so
elect—to adjust all their claims growing out of the
same contract in one action ;" because, as was remarked
by Chancellor WALWORTH (8 *Wend.* 109), "there is
a natural equity, especially as to claims arising out of
the same transaction, that one claim should compen-
sate the other, and that the balance only should be
recovered."

The court, therefore, in speaking of the guaranty,
said (p. 178) : "*There is clearly nothing in the objec-
tion that the defense set up contradicts the note. The
defendants do not deny that they made just such a
contract as that on which the plaintiff seeks to re-
cover.* But they allege that the plaintiff at the same

time entered into an engagement on his part, which has subsequently been broken. *There is surely nothing in all this which looks like attempting to alter, modify or impeach* a written contract by parol evidence."

Hutchins v. Hebbard (34 *N. Y.* 24) holds that when it becomes material to ascertain the purpose for which a writing was executed, *if not inconsistent with its terms*, it may properly be proved by parol; and that where the principal contract is oral, and in part performance a written instrument is executed, *which is merely incidental and subordinate*, the former is not merged in the latter. In that case it appeared that the *incidental and subordinate writing* was a mere power of attorney, delivered in part performance of the oral agreement, which was never reduced to writing, and the court held that the agreement was properly established by oral evidence, because it was susceptible of no other means of proof, and that the evidence was admissible, because it was not inconsistent with the terms or legal effect of the writing (p. 26).

Hope v. Balen (58 *N. Y.* 380) was an action on a lease for rent. The defense was that an agreement was made between the parties by which, in consideration of a surrender of the premises and the balance of the term, on May 1, 1869, plaintiff agreed to release the defendants from the quarter's rent sued for. Upon the trial, evidence was offered by the defendants to prove the parol agreement alleged. This was objected to by the plaintiff, upon the ground that a day or two after the parol agreement was made, and in pursuance thereof, the defendants signed a writing upon their lease, as follows: "It is hereby agreed between the subscribers that the period of the lease, within mentioned, which is unexpired on the first day of May, 1869, is hereby canceled." Plaintiff re-leased the premises to other parties, and defendants surrendered the same to the new tenants on or about May 1, 1869.

The objections were overruled, and the parol evidence received.

The point relied upon by the counsel in that case was, that the rules of evidence did not exclude proof of consideration, where none was expressed. The consideration was not expressed, the time of moving and mode of surrender not mentioned, and these things were provable only by oral evidence, which was in consequence admitted. The oral evidence did not alter or vary the writing, which was ambiguous and incomplete, until rendered plain and intelligible by the oral proofs.

Messmore v. New York Shot & Lead Company (40 *N. Y.* 422,) is as to the damages recoverable upon an executory contract left unperformed, and contains nothing whatever that is pertinent to the questions presented by the case under consideration. White's. Bank of Buffalo v. Myles (17 *Alb. L. J.* 433) was before the court upon the construction of a guaranty, and the court held that parol evidence of surrounding circumstances was admissible to show whether the instrument was to apply to a single credit or was to be a continuing guaranty.

In Bookstaver v. Jayne (60 *N. Y.* 146), the court, (near the bottom of p. 149) says : " As between original parties to a promissory note, proof may be given of the consideration and the facts attending the execution and delivery of such note, and the indorsing of the same, *which are not inconsistent with the instrument*, and which may tend to show that it has been diverted from its original purpose, or that there is a failure of consideration." Again (at p. 150) the court says : " *While this parol evidence is not admissible to vary the effect of an undertaking, or merely to show that it was to be renewed*, that when the note does not contain the whole contract, and is made in pursuance of a contract, it is competent to show what that contract was and the purpose for which it was made." While, therefore,

a party is not precluded from proving an independent contract, as was done in Batterman *v.* Pierce and Hope *v.* Balen (*supra*), the rule is not carried so far as to permit oral evidence "*to vary the effect of an undertaking, or merely to show that it was to be renewed.*"

Johnson *v.* Hathorn (3 *Keyes*, 126) was an action to recover damages for fraud and deceit, and the court, as in like cases, admitted proof of the oral understanding, so that the fraud perpetrated by the writings might be exposed and proved; and the court (at p. 133) says: "and oral evidence was properly received to show the terms of the unwritten contract, and to expose and defeat the fraud, attempted to be practiced by means of these writings, under color of carrying out his original agreement." As fraud is not imputed to the plaintiff herein, the exceptionable rule applied to the case last referred to has no application whatever to this.

Western New York Life Ins. Co. *v.* Clinton (66 *N. Y.* 331) merely holds that a claim against sureties is *strictissimi juris*, and that no implications are to be made in giving construction to the terms of a contract not clearly embraced within the language used.

*Parsons on Contracts* (vol. 2, m. p. 551, 553,) lays it down as follows: "Where the language of an instrument has a settled legal meaning, its construction is not open to evidence. . . . And in Massachusetts, one who puts his name on the back of a note (not being payee) at the time it is made, is not permitted to introduce proof that his contract was conditional only . . . Where the agreement between the parties is one and entire, and only a part of this is reduced to writing, it would seem that the residue may be proved by extrinsic evidence."

This is undoubtedly true, where the parts are independent, so that they harmoniously fit or dovetail into one another; but where the written contract in plain

language says one thing, oral proof will not be allowed to change the written words so as to make them say and mean something entirely different.

I have discovered nothing in Bowen *v.* Bell (20 *Johns.* 338) which is pertinent to the question under consideration.

Renard *v.* Sampson (12 *N. Y.* 561, 566) citing McCullock *v.* Girard (4 *Wash. C. Ct.* 289), Mowatt *v.* Lord Londesborough (3 *Ellis & B.* 307), holds : "There is a class of cases where a subsequent written agreement may co-exist with a prior verbal or written one relating to the same subject. This is the rule where the latter agreement is in execution of some distinct and separable provision of the earlier one, and also where, though made at different times, they are both intended to take effect at the same instant and to constitute different parts of the same arrangement."

Benton *v.* Martin (52 *N. Y.* 570) merely holds "that an instrument not under seal may be delivered upon conditions, the observance of which, as between the parties, is essential to its validity."

The defendants at the trial offered to prove what they called "conditions upon the delivery of the note," so as to make the above rule applicable, but the so-called conditions were nothing more nor less than terms which they thought to impress upon or add to the note in suit, so as to alter and vary its express language, and make it mean something different from what it now declares.

This was not permitted, for, as was said in Souverly *v.* Arden (1 *Johns. Ch.* 253), "If an act so authentic can be impaired by mental reservations, at the time, or by subsequent loose and idle conversations, there would be no safety in ordinary transactions, and no certainty in legal solemnities."

In these matters the thing proposed and its effect,

rather than the name by which it is called, must ever be kept in mind. Words, phrases, figures, well-known expressions, dates, and the like, cannot be transformed at pleasure.

By reducing their contract to writing, the parties to it must be held to intend that, in case of dispute, the writing shall be resorted to as the truthful exponent of their agreement.

The frail and unreliable memory of man should never be allowed to supplant and contradict · the infallible evidence of the writing, when properly executed, delivered and preserved, and its language is plain and unambiguous, and has but one meaning. Parties who enter into contracts, or make or accept instruments, are supposed to know the force and effect of the words they employ, of the precautions they use, and of the provisions which they make for their own benefit, or permit to be made for the benefit of others; and it is but reasonable to hold that the parties, by their writings, have taken the care to do justice to themselves, and it would be dangerous to allow them to be changed or varied afterwards to suit the conflicting recollection of oral proof. "It would be inconvenient," said one of our old books, more than one hundred and fifty years ago (5 *Coke* 26, a) "that matters in writing, made by advice and on consideration, and which finally import the certain truth of the agreement of the parties, should be controlled by averment of the parties, to be proved by the uncertain testimony of slippery memory." I have examined all the cases cited by the defendant's counsel, and have extracted from and commented upon each, and have failed to discover one which goes to the extent of permitting the proof offered by the defendants in the present case. The reason is more clearly demonstrated in the many cases holding that contemporaneous parol

stipulations, contradicting or varying the legal effect of an instrument, are not admissible (Johnson *v.* McIntosh, 31 *Barb.* 267). The following may serve as illustrations: Thus, in an action against the indorser of a bill of exchange, parol evidence of an agreement between the drawer and holder, for an extension of time, was excluded, it appearing that the drawer had executed a mortgage to the holder to secure the payment of the bill, at the execution of which the alleged agreement was made; it was held that the mortgage must be taken to express the true and only agreement for the payment (Burbank *v.* Beach, 15 *Barb.* 326). The court, in the case just cited (at p. 332), said: "The verbal agreement testified to by Boyce, that the time of payment of the bill in suit should be extended, was, according to his testimony, part of the agreement for the mortgage, and made at, and prior to, the execution of the mortgage; and it is a fatal objection to it that it contradicts that instrument. The mortgage describes the bill in suit; the condition of the mortgage is, that it shall be paid with other bills and sums, and authority is given to sell the premises in case default shall be made in payment of any sum secured. It contains no provision for the extension of the time of payment of any paper. According to the mortgage, no other time being specified, the bill was to be paid at maturity, which was on October 13, 1851, and the mortgage might have been enforced, in respect to it, upon its non-payment at that time; but according to the verbal agreement, the time of payment of it was extended to January 15, 1852. The mortgage, then, provided for its payment at one time, and the verbal agreement at another. Here is a direct contradiction, and it is plain that the mortgage must be taken to express the true and whole agreement in regard to the time of payment."

Parol evidence of an agreement, made at the time

of the execution of a promissory note, for an extension of time upon the note, is inadmissible (Frost v. Everett, 5 *Cow.* 497), and the same ruling was made in reference to a bond (Martin v. Rapelye, 3 *Edw.* 229). So, in regard to a bond and mortgage (Hunt v. Bloomer, 5 *Duer*, 202), and where a bond and warrant of attorney were given as security for outstanding notes, on terms specified in a written agreement of the creditor, a contemporaneous agreement to extend the time for payment of the notes was not permitted to be proved by parol (Farmers' & Manufacturers' Bank v. Whinfield, 24 *Wend.* 419), and it has been held that where a promissory note expresses no time for its payment, it is in law payable immediately, and parol evidence that it was intended to be payable at a future day, or at a different place from that at which it was drawn, is inadmissible (Thompson v. Ketcham, 8 *Johns.* marg. p. 190; Van Allen v. Allen, 1 *Hilt.* 524), and parol evidence is inadmissible to show that a note, absolute in its terms, was made subject to a condition, no fraud or mistake being alleged (Erwin v. Saunders, 1 *Cow.* 249; and see Payne v. Ladue, 1 *Hill*, 116; Ely v. Kilborn, 5 *Den.* 514). Parol evidence is inadmissible to show that a promissory note was to be paid out of a particular fund, and that in a certain contingency, the maker was to be liable for a part only of the amount, because such evidence would substitute an entirely different agreement for the written instrument (Gridley v. Dole, 4 *N. Y.* 486; Lewis v. Jones, 7 *Bosw.* 366).

Parol proof of acts of the parties under a contract clear and unambiguous in its terms, cannot be received to control the construction of the contract (Norton v. Woodruff, 2 *N. Y.* 153; Giles v. Comstock, 4 *Id.* 270; Clark v. Baird, 9 *Id.* 183; Lawler v. Le Roy, 2 *Sandf.* 202), so that the evidence as to the proposed oral agreement was properly rejected, and the acts of the parties

were immaterial, as the contract in suit was clear and unambiguous in its terms.

To admit oral evidence as a substitute for instruments, to which, by reason of their superior authority and permanent qualities, an exclusive authority is given by the parties, would be to substitute the inferior for the superior degree of evidence, conjecture for fact, and presumption for the highest degree of legal authority; loose recollection and uncertainty of memory for the most sure and faithful memorials which human ingenuity can devise, or the law adopt; to introduce a dangerous laxity and uncertainty as to all titles to property, which, instead of depending on certain fixed and unalterable memorials, would thus be made to depend on the frail memories of witnesses, and to be perpetually liable to be impeached by fraudulent and corrupt practices (*Starkie on Ev.* 9 ed. 651).

The old elementary rule is still in force and ever will be. The exceptions to it will be found in actions wherein the exception allowed was necessary in furtherance of justice, and generally in cases of independent promises, the proof of which, by oral evidence, did not at all "alter or vary the terms or legal effect of the writing." In the present case, however, the defendants undertook by parol proofs to show an oral agreement, made prior to giving the note in suit, that the note, although for $900, payable in four months, was in fact an instrument on which only $300 was to be paid at maturity, and that the balance was not to become payable until the plaintiff accepted a renewed note of $600 at four months longer, and that on this instrument $300 was to be paid at maturity, and a renewed note given, payable at four months from that time, for the remaining $300 ; and all this, the defendant's counsel contends, does not "alter or vary" the terms or legal effect of the $900 note sued on, and he insists that the authorities

from which I have cited so largely sustain his claim. In this I am compelled to differ from him not only in his understanding of the rule, but in the interpretation of the various cases he cites. If a written security can be thus transformed by oral proofs, writings are but deceitful instruments, which may represent one thing, and at the same time mean another. A note payable at one year may be shown by oral proofs to be payable at ten or any other number of years, with all sorts of conditions. But such, fortunately, is not the law. In Brown *v.* Spofford (5 *Otto* [*U. S.*], 481), the court lays down the rule as follows : "Decided cases of the most authoritative character have determined that parol evidence of an oral agreement, alleged to have been made at the time of the drawing, making, or indorsement of a bill or note, cannot be admitted to vary, qualify, contradict, add to, or subtract from, the absolute terms of the written contract (citing Specht *v.* Howard, 16 *Wall.* 564). In the absence of fraud, accident, or mistake, the rule is the same in equity as at law, that parol evidence of an oral agreement alleged to have been made at the time of drawing, making, or indorsing a bill or note, cannot be permitted to vary, qualify, or contradict, or to add to or subtract from, the absolute terms of the written contract (citing Forsyth *v.* Kimball, 91 *U. S.* 291).

"Parol evidence of an agreement made contemporaneously with a promissory note which contains an absolute promise to pay at a specified time, is not admissible in order to extend the time for payment, or to provide for the payment out of any particular fund, or in any other way than that specified in the instrument, or to make the payment depend upon conditions (citing *Chitty on Contr.* 10 ed. 99 ; Abrey *v.* Cruz, *Law Rep.* 5 *C. P.* 41 ; Allan *v.* Furbish, 4 *Gray*, 514 ; 2 *Pars. Bills and Notes*, 501)." If the understanding had was that the $900 should be paid in the manner contended

by the defendants, why did they not have three notes instead of one? and why did they not have them payable $300 at four months, $300 at eight months, and the remaining $300 at twelve months? It could have been easily done, and all possibility of question prevented. The parties did not see fit to do this; they elected to make one contract for $900, and that payable at four months, and they are holden in law to have intended just what the writing expresses.

The defendants' counsel claims that the sureties were entitled to show the consideration which induced them to become parties to the instrument sued upon.

Perhaps they were, for they were allowed by the ruling at the trial the liberty of proving a want of consideration, but they did not. The answer, however, satisfies me that there was a consideration. The sureties allege in effect that they wanted to assist Herman Koehler, the principal, in getting time to pay his indebtedness to the bank. This extension, suspension or forbearance, furnished a good consideration for the note in suit. (For illustrations see Thompson v. Gray, 63 *Me.* 228; Holyworth v. Koch, 16 *Am. Law Reg. N. S.* 148; Burns v. Rowland, 40 *Barb.* 369; Traders' Bank v. Bradner, 43 *Id.* 379; Cary v. White, 7 *Lans.* 4; Putnam v. Lewis, 8 *Johns.* 389; Pratt v. Coman, 37 *N. Y.* 440; 5 *Trans. App.* 334; Fellows v. Prentiss, 3 *Den.* 512; Place v. McIlvain, 1 *Daly*, 270; 38 *N. Y.* 99; Millerd v. Thorn, 56 *Id.* 406; Platt v. Stark, 2 *Hilt.* 401; Smith v. Appelgate, 1 *Daly*, 93; Hubbard v. Gurney, 64 *N. Y.* 466.) It is clear to my mind that the defendants have no defense to this action.

The second objection to the defense pleaded by the defendants, is the failure of the defendants to keep their tender good by depositing the $300 cash and the $600 note tendered, into court.

The general rule is, that the tender must be kept good by paying the amount or thing tendered into

court (2 *E. D. Smith*, 197 ; 25 *How. Pr.* 464 ; 7 *Robt.* 389 ; 21 *N. Y.* 343), and the plaintiff is in any event entitled to the amount tendered or paid in (1 *Barb.* 115 ; 1 *E. D. Smith*, 498 ; 1 *Wend.* 191 ; 13 *Id.* 390).

In Becker *v.* Boon (61 *N. Y.* 317), the court holds that in order to make a tender before suit brought available, the defendant must pay the money into court, and allege the fact in his answer, and that an answer of tender omitting this allegation is not waived by going to trial where other issues are presented by the answer. The court says (p. 322), "The object of payment into court· is to place the money tendered where the plaintiff is sure to get it. It then becomes the plaintiff's money, and the defendant cannot dispute his right to it. If the tender be established, judgment goes against the plaintiff, and he takes the money tendered for his claim, and the defendant recovers costs of the action.

"But what is the condition of the plaintiff here ? He has been defeated in the action because the tender was made, yet he has no means to enforce the recovery of the check in this action. The provision in the judgment, that he shall receive the check, cannot be enforced in case the referee has parted with it, or is unwilling to deliver it to the plaintiff; and before delivery to the plaintiff, the drawers may withdraw their funds from the bankers, and the check may thus become entirely worthless."

Applying the rules in regard to tender to the present case, the defendants ought to have deposited the $300 cash and $600 note in court, and the plaintiff might have gone to the clerk's office and taken the cash and note. The plaintiff might have used the cash, and at maturity might have collected the note, and used the proceeds, because the thing tendered becomes the property of the plaintiff *absolutely* from the moment of the deposit.

If, upon the trial, the jury had found the tender and deposit sufficient, the verdict would necessarily have gone for the defendant.

If, on the other hand, the jury had found the tender and deposit insufficient, the verdict would have gone for the plaintiff for the entire amount of the claim, and the deposit would have been credited upon account (Dakin v. Dunning, 7 *Hill*, 30). There was no error, therefore, committed upon the trial.

The two objections to the proposed defense were well taken, the defendant's proofs were properly rejected, and the defendant's motion for a new trial must be denied.

No appeal was taken from this decision.

In Willse v. Whittaker (11 *Weekly Dig.* 24), the accommodation indorsers of a note, payable on its face one day after date, were allowed to show that they indorsed the same upon the express agreement that they were to have three months in which to pay it, and that otherwise they would not have indorsed it. Upon appeal, this was held error. The appellate court said: "The agreement given in evidence was directly inconsistent with and affected the terms of the note (55 *N. Y.* 293; 78 *Id.* 74; *Edwards on Bills*, 148, 313). The defendants might as well have been permitted to prove that their agreement was to pay $10 only, instead of the face of the note, i. e.. $230. Nor do we think that the alleged agreement was a distinct and separate agreement, collateral to the indorsement. But, if made, it was an oral agreement, varying the terms of the written contract of indorsement, and should not have been received in evidence. Judgment reversed, and new trial granted."

In Wilson v. Deen (74 *N. Y.* 531), it was held that where a lease is in writing, the rights and duties of the parties depend upon the terms or legal intendment of the lease itself, as it is conclusively presumed that the whole engagement is embraced therein. The rule is the same in equity as at common law; and, in the absence of proof of fraud or mistake, the contract cannot be controlled by evidence that it was executed on the faith of a contemporaneous or preceding oral stipulation not embraced in it; nor can it be set aside on the ground that such oral stipulation has not been performed.

Hoare v. Graham (3 *Campbell, Nisi Prius*, 57) was an action upon a promissory note for £4,500, dated October 19, 1810, made by Gibbon

& Boyce, payable to the defendants two months after date, indorsed by them to Grill & Son, who indorsed it to the plaintiffs. The defense set up was, that the note had been drawn as a collateral security for certain advances made by the plaintiffs to Grill & Son; that, at the framing of the note, the defendants refused to indorse it, unless the plaintiffs would agree that it should be renewed when it became due; that the latter acceded to this condition; and that they afterwards demanded payment, instead of calling for a renewal. Lord ELLENBOROUGH said:

"I don't think I can admit evidence of this sort. What is to become of bills of exchange and promissory notes, if they may be cut down by a secret agreement that they shall not be put in suit? The parol condition is quite inconsistent with the written instrument. This purports to be a promissory note, payable two months after date. You say it was not payable at the end of that time, and that, when the two months had expired, the payees, instead of the money, were to have another promissory note. I will receive evidence that the note was indorsed to the plaintiffs as a trust; but the condition for a renewal entirely contradicts the instrument which the defendants have signed. Such an agreement rests in confidence and honor only, and is not an obligation of law. There may, after a bill is drawn, be a binding promise for a valuable consideration to renew it when due; but if the promise is contemporaneous with the drawing of the bill, the law will not enforce it. This would be incorporating with a written contract an incongruous parol condition, which is contrary to first principles. There must be a verdict for the plaintiffs."