## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### CRAFFORD V. SUPERVISORS OF WARWICK COUNTY.

November 20th, 1890.

CONSTRUCTION OF STATUTES—*Corporations—Persons.*—Act of March 2d, 1888 (Acts 1887-'88, p. 465), provides that the judge of the county court shall, upon the application of persons paying one-third of the taxes on real estate in the county of Warwick, order a poll to be opened to ascertain the sense of the qualified voters as to whether or not the site of the court-house of the said county should be changed: *held*, the word "persons" in said act includes "corporations."

Appeal from circuit court of Warwick county, rendered March 22d, 1889, in an injunction suit wherein John H. Crafford and others, citizens, tax-payers, and voters of the said county (and the appellants here), are complainants, and the board of supervisors of said county are defendants. Opinion states the case.

*Christian & Christian,* and *J. F. Hubbard,* for the appellants.

*Thomas Tabb,* and *A. S. Segar,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The decree appealed from dissolved an injunction awarded by the judge of the corporation court of the city of Manchester, enjoining and restraining the said defendants in said suit, the said board of supervisors of the county of War-

wick, their agents, successors, &c., from pulling down and removing the court-house, clerk's office and jail of the said county of Warwick, which the said defendants were proceeding to do, in consequence of the result of an election held in said county under the order of the county court of said county, made in pursuance and by virtue of the authority of an act of the General Assembly of Virginia, approved March 2d, 1888, entitled "an act to authorize the qualified voters of Warwick county to vote upon the question of the removal of the court-house of said county." Session Acts 1887–'88, page 465.

The point to be decided by this court is the proper construction of the first section of this aforesaid act, which is as follows: "That it shall be the duty of the judge of the county court, upon the application of persons paying one-third of the taxes upon real estate in said county, to order the officers conducting elections at the several places for holding elections in the county of Warwick, on the fourth Thursday in May, 1888, to open a poll for the purpose of ascertaining the sense of the qualified voters of said county as to whether or not the site of the court-house of the said county shall be changed from its present location to Newport News, in said county," etc.

At the March term, 1888, of the county court of Warwick county, to-wit: on the 12th day of March, 1888, an order was made reciting that "upon the application, in writing, of George B. West, C. M. Braxton, J. J. Kellum, S. B. Reeser, T. H. Gordon, A. C. Jones, C. F. Groome, B. F. Turlington, John A. Young, E. B. Smith, J. M. Curtis, J. H. Schriminger, and others, it appearing to the court from the land books of the county of Warwick that the applicants pay more than one-third of the tax assessed on real estate in said county, it is ordered that, in accordance with the act of assembly approved March 2d, 1888, the sense of the qualified voters of the said county be taken on the fourth Thursday in May, 1888, as to whether or not the site of the court-house of the said

county shall be changed from its present location to Newport News in said county," etc. Accordingly, on the fourth Thursday in May, 1888, the said election was duly held as ordered, at which said election six hundred and thirty-three votes of registered voters of the said county of Warwick were polled and canvassed for the removal of the court-house of Warwick county to Newport News, and three hundred and seventy-eight votes of registered voters of said county were polled and canvassed against the removal of the court-house of Warwick county to Newport News. In pursuance of and in obedience to the will of the majority of the qualified voters of Warwick county, as ascertained at the said election and duly certified, the board of supervisors of the said county (appellees here) were carrying into effect the sense of the voters as so expressed when the appellants presented the judge of the corporation court of Manchester their bill, alleging that no valid election has ever been held or ordered under the provisions of the said act of the General Assembly, etc., and praying for an injunction to restrain the board of supervisors of Warwick county in their said proceedings, and for a decree declaring that the said election had been improperly ordered, and was, therefore, illegal and void, and asking for general relief. On the 4th day of September, 1888, an injunction was awarded to the complainants, according to the prayer of their bill, by the judge of the corporation or hustings court of the city of Manchester to "enjoin and restrain the defendants, the board of supervisors of Warwick county, &c., their agents, &c., and all others, from pulling down and removing the court-house, clerk's office, and jail of the county of Warwick from its present location until the further order of the circuit court of the county of Warwick."

The defendants answered and demurred to the bill, and the circuit court, by its decree of March 22d, 1889, "overruling the said demurrer, ordered and decreed that the injunction heretofore awarded in this cause by the Hon. J. H. Ingram,

judge of the corporation court of the city of Manchester, September 4th, 1888, be, and the same is hereby, dissolved, and the bill of the plaintiffs be dismissed," &c.

The question raised by the pleadings in this cause, is, whether or not, *corporations* are included or signified in the term *"persons,"* as expressed in the first section of the said Act of Assembly of March 2nd, 1888, under which the sense of the qualified voters of Warwick county was ordered to be taken, and was so taken, by the election aforesaid? The appellants contend, that the word *"persons,"* in the said act, does not embrace or include corporations; and that the said word *"persons"* should be construed to mean *"voters* paying taxes on real estate in the county of Warwick;" and that the corporations, owning real estate in the said county and paying taxes on the same amounting to very nearly two-thirds of the whole taxes on real estate in the county, were not competent signers to the written petition or application to the judge of the county court, upon which he based the order for the election to take or test the sense of the qualified voters, of the county of Warwick, as to the removal of the site of the court-house of the said county, under the provisions of the said act. The language of the first section of the act, under consideration, is plain, explicit, positive and unambiguous, and neither calls for, nor admits of, *construction.* If the legislature had intended, that the words (which it did use), " upon the application of persons paying one-third of the taxes upon real estate in said county," should mean "qualified voters paying taxes on real estate in the county of Warwick" (which it did not use), it would, presumably, have said so; and few, simple and unambiguous as the words are, contained in the said first section, the "officers conducting elections in the county of Warwick, on the fourth Thursday in May, 1888, are ordered to open a poll for the purpose of ascertaining the sense of the *qualified voters* of the said county, &c., in the same sentence in which it is said "that it shall be the duty of the judge of the county

court, upon the application of persons paying one-third of the taxes upon real estate in said county, to order the election to be held, &c. It is, thus, unmistakably and undebatably, manifest upon the face of the short and plain first section, itself, that, in the same sentence, the legislature *discriminated* the phrase, "persons paying one-third of the taxes upon real estate in said county," from the phrase, "the sense of the qualified voters of said county," making the one, the condition precedent to warrant the judge to order the election, and the other to define and confine the election, when held, to the "qualified voters of said county."

The legislature, like every other oracle, must be held to *intend* to say, what it has explicitly and imperatively said ; and where, by the use of clear and unequivocal language, anything is enacted by the legislature, effect must be given to it, and it cannot be construed away. The whole amount of the taxes upon real estate in the county of Warwick, for the fiscal year of 1887–1888, was $10,009.76, of which $6,451.80 was paid by corporations owning real estate in the said county; and the first section of the act devised a mode by which these heavy tax-paying corporations could, to a certain extent, and in the preliminary action prescribed to the election, protect their large interests from the expense and burden of the cost of the election, and of the removal of the court-house from its present location, to Newport News. The design of the statute was, to protect the tax-payers, and a designated class of tax-payers—those who paid taxes upon real estate in the county—from the imposition of additional taxation upon their real estate. The tax-payer on personalty could not petition the county judge to order the election. Why, nobody knows or can conjecture; but so it was enacted. Corporations paid taxes on real estate in the county, like as individuals, and had the same interest to protect and a like burden to bear, should the expense be incurred and the tax imposed to pay it. Why are they not in equal protection of the law? They belong to

the designated class, and they are equally within the reason, the justice and the intent of the law.   They could not vote, but they were, designedly and expressly, given a voice in the question as to whether or not the election should be ordered, and thereby have an additional burden of taxation imposed upon them.

An intent to do what is unjust, and to discriminate, unjustly and without reason, between different cases of a like kind, is not to be ascribed to the legislature. *Arthur* v. *Blight*, 2 Cranch, 390; 24 Pickerell, 370.   The real estate of both the individual and the corporation are alike subject to the taxation which may be imposed: Can any reason be given why there should be a discrimination against corporations owning real estate, and paying nearly two-thirds of all the taxes on real estate in the county, under this statute, to determine the question of whether additional taxation should be made necessary?   Would not this be an unjust and unreasonable discrimination between classes of tax-payers in similar cases? Wherever the governing principle is taxation, the term persons in a statute has been held to include corporations; and, under the assessment and tax laws, corporations are assessed and taxed, although the word *persons* is used therein, and corporation is not mentioned.   In the case of *Bearton* v. *Farmers Bank of Delaware*, 12 Peters, 134–5, the supreme court of the United States said: "Corporations are to be deemed and considered as '*persons*,' when the circumstances in which they are placed are identical with those of natural persons expressly included in such statutes."

In *Stribling* v. *The Bank of the Valley*, 5 Rand., on p. 180, Judge Cabell said: "The term 'person,' used in the law, is unquestionably sufficiently comprehensive to embrace corporations; and it must be held to embrace them, unless there is something in the law showing the legislative intention to restrict its application."

In *United States Bank* v. *Merchants Bank*, 1 Robinson, 589,

Judge Allen said, "For civil purposes, corporations are, in law, deemed persons. *U. S. v. Arnedy*, 11 Wheaton, 393; and quoting, with approval, *Bearton* v. *Farmers Bank of Delaware*, 12 Peters, 134, and *Stribling* v. *Valley Bank*, 5 Rand. 132, goes on to say, the " only doubt has been whether the word (person) would embrace (corporations) within penal statutes," &c.

In *Baltimore & Ohio R. R. Co.* v. *Gallahue's Adm'r*, 12 Gratt., 663, "When the word persons is used in a statute, corporations, as well as natural persons, are included for civil purposes." 2 Inst., 697, 703, 736.

In the Code of 1873, chapter 16, section 17, page 101, it is provided that the word persons, in a statute, "may extend to and be applied to bodies politic and corporate as well as to individuals, unless it would be inconsistent with the manifest intention of the legislature;" and the same provision is in the Code of 1887. The word persons does certainly include corporations unless the intention of the legislature is manifest that corporations were intended to be excluded from its operation. Corporations are not, in terms, excluded from its operation. The omission of the word corporations does not exclude them, for this act uses a word "persons," which may include them, and which must include them, unless it was the manifest intention of the legislature to exclude them from the operation of the act. Nor is there anything in the nature of the act to exclude corporations from its operation. *Miller's Ex.* v. *The Commonwealth*, and *Barrett's Adm'r* v. *The Commonwealth*, 27 Gratt., 115. See also *Lehigh Bridge Co.* v. *Lehigh Coal and Navigation Co.*, 4 Rawle, 9; *Field* v. *N. Y. Central R. R. Co.*, 29 Barb., 176; *Wright* v. *Tame*, 28 Barb., 80; *Johnson* v. *McIntosh*, 31 Barb., 267; *Wallace* v. *Mayor of New York*, 2 Hilton, 440; *La Forge* v. *Exchange Fire Ins. Co.*, 22 New York, 334; *The People* v. *Utica Ins. Co.*, 8 A. D., 251; *Pembina Manuf'g Co.* v. *Pennsylvania*, 125 U. S. R., 1889; *Providence Bank* v. *Billings*, 4 Peters, 504.

To hold, as is the contention of the appellants, that the leg-

islature intended, by the use of the word "persons," paying one-third of the taxes, &c , to restrict it to *voters* paying one-third of the taxes, &c., would not only exclude corporations, but non-residents, and even residents who had not resided long enough to become voters—women, minors, aliens—none of whom could be a voter, yet many of whom, if not, indeed, all, are tax-payers upon real estate in Warwick county.

If we give the other construction contended for by the appellants, that "persons" meant natural persons, and that natural persons signing the application should represent one-third of the taxes paid upon real estate, it would have put it in the power of two persons paying one-forty-fifth part of the whole real estate tax in the county to have denied the wishes and defeated the will of all the other real estate owners, and the whole population of the county united in the application to the judge to order the election. It is not to be imputed to the legislature that they had any such an absurdity of intention; and it is not consistent with the object and context of the act.

If corporations paying taxes upon real estate in Warwick county are not within the intent of the word "persons" in the act, then they must be excluded; and if excluded, the individuals paying taxes upon real estate in the county, who signed the petition or application to the judge to order the election, did pay more than one-third of the taxes paid by individuals on real estate in the county of Warwick. The amount of taxes upon real estate in the county of Warwick paid by corporations was $6,451.80, of which sum the Chesapeake & Ohio R. R. Co. paid $3,130.47. It is objected by the appellants that Williams C. Wickham, who signed the application to the judge to order the election, did so as receiver, and without authority. It is not necessary to decide this question, inasmuch as those corporations who did sign, other than the C. & O. R. R. Co., by W. C. Wickham, receiver, paid $2,271.33, which, added to the taxes on real estate paid by in-

dividuals who signed the application, $1,395.46, amounts to $3,666.79; which is more than one-third of the whole amount of the taxes on real estate paid in Warwick county by $333.53.

We are of opinion that the election was properly ordered by the judge of the county court of Warwick, and that the election was duly and properly conducted; and that the circuit court rightfully dissolved the injunction which had been granted in the cause, September 4th, 1888, by the judge of the corporation court of the city of Manchester; and the decree appealed from is without error; and the same is affirmed.

DECREE AFFIRMED.