Henderson *v.* Marvin.

————•◆•————

31   297
137a 315

## HENDERSON & KENNEDY *vs.* MARVIN.

If a surety is to be held upon his contract, that contract must remain unchanged, unless by his consent; and he must be held according to the tenor of the contract, or not at all.

Where M. agreed to guaranty to the plaintiffs the payment of the price of goods to be sold to a third person, prior to January 1, 1857, to the amount of $500, *on a credit of six months,* and after the sales of the goods and their delivery, the plaintiffs *extended* the term of credit, as to a part of the amount, and *shortened* the term as to a part of the amount, by taking the third party's promissory notes therefor, having different periods of time to run; *Held* that the guarantor was discharged.

APPEAL from a judgment entered on the report of a referee. The action was brought upon an agreement dated November 22, 1855, by which the defendant agreed to pay the amount of goods not exceeding $500, sold on six months' credit, by the plaintiffs, to Pierce & Champlin of Buffalo, on or before December 31, 1856, and remaining on January 1st, 1857, unpaid. Under and in pursuance of the agreement, the

plaintiffs sold to Pierce & Champlin goods as follows, viz : In November, 1855, $519.10; December, 1855, $444.98; January, 1856, $204.45; March, 1856, $112.15; April 3d, 1856, $110.65; April 16th, 1856, $27.55. Payments were made as follows, viz: 1856, February 25th, $74.14. 1856, April 25th, goods returned, $347.16. On the 25th of February, 1856, Pierce & Champlin gave to the plaintiff two notes, dated December 1st, 1855, one for $500 at six months, and one for $595 at seven months, and on the 15th day of May, 1856, these two notes were returned to Pierce & Champlin, who gave in their place a note for $1095, dated on that day and payable one day after date. On the 17th day of May, 1856, the plaintiffs commenced an action against Pierce & Champlin, on the last mentioned note, and on the 5th of June recovered judgment, by the confession of Pierce, for $982.83 damages and costs, against him personally and as a partner. An execution was issued upon the judgment and $185.12 was made thereunder. Champlin was afterwards sued and judgment had against him personally and as a partner, for the amount then due. The referee found that the goods were sold on the terms of credit required by the contract, and that the defendant was liable, unless released by subsequent acts of the plaintiffs. And holding that a subsequent extension of the time of credit would release the defendant, and that a subsequent shortening of time would not, the referee found that the credit of $74.14 was applicable to the first sale, thereby reducing the November sales to $445.57, the time of credit of which amount was extended by the $500 note; leaving the balance of the note, viz. $55.43, to apply on the December sales, and therefore not extending the time of credit of that amount of those sales. And also that the amount of $347.16 for goods returned, was first applied to pay for the purchases after the giving of the two notes, and the excess was applied upon the notes; leaving the time of credit of the December sales (with the exception of the $55.43 extended, and that of the January sales) not extended by the note of $595. The January sales, $204.45, and the

Henderson *v.* Marvin.

December sales covered by the $500 note, ($55.43,) and the interest, amounted to $296.44; which amount the referee reported to be due to the plaintiffs.

*By the Court,* GOULD, J. In this case I do not perceive that there is any controversy about the facts. The defendant agreed to guaranty to the plaintiffs and their assignor the amount of their claims against a third party for goods that, prior to January 1st, 1857, they might sell to such third party, *on a credit of six months;* the guaranty not to cover a sum greater than $500. Certain goods were sold on the credit agreed, enough to bring the defendant's liability up to his guaranty of $500. But, (as the referee finds, and as there is no dispute,) after the original sales of these goods, and their delivery, the plaintiffs *extended* the term of credit on a part, and *shortened* the term of credit on a part, by taking the third party's promissory notes therefor, having different periods of time to run. The referee found, as matter of law, that as to those goods for which the credit was *extended,* the surety was not liable; and did not include the amount of those in his report; and from that part of his decision there is no appeal. He, however, found that *shortening* the term of credit did *not* discharge the surety; and for the value of the goods, the credit for which had been shortened, he found for the plaintiffs; and the defendant appeals from that part of his report, and from the judgment entered thereon. And the single point submitted to us is, the correctness or incorrectness of the conclusion of law, on the part of the referee.

It being, as it is, conceded that an original sale, on any term of credit other than one of six months—whether it varied from that term two days, or two months—would not bind the surety, (6 *Hill,* 540; 2 *Comst.* 185,) I must confess I do not see how it alters the law of the case, that the abridging of the term of credit was made *after* the sale. The main point— the *actual shortening of the credit*—was accomplished; and its effect on the term of credit was just the same as if the

---
Henderson *v.* Marvin.
---

original credit had been given for the shorter period. The *real credit* was *not* for six months. In 6 *Hill,* 542, the phrase is, "he must agree to wait, *so that he cannot sue in the mean time.*" And can he not "sue in the mean time," when having first agreed to wait the full term, he and his principal debtor afterwards (and before the expiring of that term) agree that the term may be so shortened that he *can* "sue in the mean time?" The *second* agreement as to credit *abrogates* the first; and thenceforth *the credit* is for the newly agreed term: and on *that,* there can be no pretense that the surety is held.

In the case before us, not only *could* the creditor sue *within* the original time of the credit, but he actually *did so.* And it would seem a little difficult, after that, to hold the party who was surety for a credit of six months, and for no longer or shorter term. To hold any other rule, were to place the surety entirely at the mercy of the creditor and a principal who saw fit to help the creditor rather than his surety; if not at the mercy of the creditor alone; since the latter, by a variety of inducements, (as to other sales,) might overbear the wishes and intentions of the principal. And since, if the term of credit could be shortened at all, without releasing the surety, it would be immaterial how much it was shortened, or *when* the shortening process was effected. A party might one day sell on the stipulated credit of months, and the *next day* abridge the term to days. In short, there is no safety in attempting to vary the rule from its strictness. We must insist that, if a surety is to be held *upon his contract,* that contract, (whatever may be done with any *collateral* matters, and many such are noted in the books,) that contract must remain *unchanged,* unless by his consent; and he must be held *according to the tenor* of that contract, or not at all.

The judgment should be reversed and a new trial had.

[ALBANY GENERAL TERM, December 5, 1859. *W. B. Wright, Gould* and *Hogeboom,* Justices.]