THE WESTERN NEW YORK LIFE INSURANCE COMPANY, Appellant, *v.* DE WITT W. CLINTON et al., Respondents.

In an action against sureties upon a bond given by an agent for the faithful performance of his duties, the surrounding circumstances and the situation of the parties, at the time of its execution, may be considered in construing its terms, in case of ambiguity therein.

It is no defence to an action upon such bond that the sureties were ignorant as to the extent of the obligation assumed, or were misled by the principal in reference thereto; in the absence of proof that the obligee was a party to the fraud; it is not the duty of the obligee to seek out the sureties and explain to them the nature and extent of their obligation, but it is for the sureties to ascertain for themselves.

Defendant De W. W. C., as principal, and the other defendants, as sureties, executed a bond to plaintiff reciting the appointment of De W. W. C. as agent for plaintiff " for the purpose of procuring applications for life insurance and collecting premiums thereon." Plaintiff and De W. W. C. had entered into two contracts, the first appointing the latter as general agent to procure applications for, and to effect all kinds of, insurance authorized by plaintiff, he to retain a certain per centage and to account for, and pay over, the residue; by the second, De W. W. C. agreed to collect renewal premiums on policies issued through a former general agent, he to receive a per centage, but to apply the same toward the purchase of the renewals until he had paid $1,000, when the said renewals were to be assigned to him and he to be entitled thereafter to retain the per centage. The former contract was shown to the sureties when they executed the bond; it did not appear that they saw or knew of the latter. In an action upon the bond, *held*, that it embraced

within its terms the premiums collected under both contracts, and that it was immaterial that defendants had no knowledge as to the second. *Bigelow* v. *Benton* (14 Barb., 123), *Henderson* v. *Marvin* (31 Barb., 297), *Wilson* v. *Edwards* (6 Lans., 134), *Bagley* v. *Clarke* (7 Bosw., 94), and *Grant* v. *Smith* (46 N. Y., 93) distinguished.

(Argued May 24, 1876; decided June 6, 1876.)

Appeal from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiff entered upon the report of a referee, and granting a new trial.

This action was upon a bond executed by the defendant De Witt W. Clinton as principal, and by the other defendants as sureties, conditioned as follows:

"The condition of this obligation is such that, whereas the above bounden De Witt W. Clinton, of Buffalo, New York, has been appointed as an agent of the said Western New York Life Insurance Company, for the purpose of procuring applications for life insurance and collecting premiums thereon; now, if the said De Witt W. Clinton shall well and truly pay or hand over to said company all moneys belonging to said company, which shall at any time be received by him, as also all moneys which he now owes, or hereafter may owe, said company, on or before the first day of each month, and shall faithfully discharge the duties as agent of said company, then this obligation shall be void, otherwise to remain in full force and effect."

At or prior to the time of the execution and delivery of the bond, two contracts had been made and entered into by and between plaintiff and said Clinton. By the first contract, Clinton was appointed general agent of plaintiff, for a specified territory, "to procure applications for insurances upon lives of individuals for the term of life, and for endowments, short-time insurances and annuities in said company, and to effect all kinds of insurance authorized by said company; and the said party of the second part hereby agrees to act as agent of said company in procuring insurances as aforesaid, in the

above-mentioned territory," Clinton to receive and retain a specified per centage as "commissions on premiums and renewal premiums paid to said company upon business done by him or through his agency," he agreeing, at the end of each month, to account for, and pay over, all moneys collected, less commissions and expenses. By the second contract, plaintiff agreed to allow Clinton commissions on all moneys collected by him on renewals of policies issued or negotiated by one J. L. McKeever, a former general agent of the company, whose place Clinton took and whose right to commissions on such renewal premiums the company had purchased; the per centage, however, with the residue of such premium collected, was to be paid in to the company, to be applied "toward the purchase of the said renewals," and as soon as Clinton paid the sum of $1,000 and interest, plaintiff agreed to assign and transfer to Clinton all of said renewals and afterwards to pay him the same commissions as were before paid to McKeever. Clinton agreed to collect the said renewal premiums and to pay over the same as specified.

The referee found that all of said instruments were executed and delivered in pursuance of a prior parol agreement between plaintiff and Clinton by which his agency, both as to new policies and the McKeever renewals, was agreed upon.

Clinton left plaintiff's employment October 2, 1871, at which time he had in his hands moneys collected, both on policies issued through his agency and on the McKeever renewals, which he did not pay over as agreed. The referee found, as conclusion of law, that defendants were liable for the whole of said moneys, with interest, and directed judgment accordingly.

*Mr. Tarbox* for the appellant. The fact that the sureties were misled or deceived by their principal as to the nature and extent of his contract with plaintiffs, is not available as a defence to this action. (*Casoni v. Jerome*, 58 N. Y., 315–321; *McWilliams v. Mason*, 31 id., 294; *McNaught v. McClaughry*, 42 id., 25.) It was not plaintiff's duty to notify

the sureties that their principal had retained some of its money in his hands. (*Orme v. Young*, 1 Holt N. P., 84; 2 J. J. Marsh, 564; *P., Ft. W. and C. R. R. Co.* v. *Schaeffer*, 8 Am. L. Reg. [N. S.], 110; *Looney* v. *Hughes*, 26 N. Y., 522; *Schrœppell* v. *Shaw*, 3 id., 446; *B. Riv. Bk.* v. *Page*, 44 id., 453; *Albany D. C.* v. *Vedder*, 14 Wend., 165; *People* v. *Berner*, 13 J. R., 383; *McKecknie* v. *Ward*, 58 N. Y., 541; *At. and P. Tel. Co.* v. *Barnes*, 7 J. & S., 40.)

*E. Countryman* for the respondents. No intendments or implications will be made in construing the terms of the contract of the sureties not clearly embraced in the language used in their bond. (*Dobbin* v. *Bradley*, 17 Wend., 423; *Walrath* v. *Thompson*, 6 Hill, 540; 2 N. Y., 185; *Miller* v. *Stewart*, 9 Wheat., 681; *Grant* v. *Smith*, 46 N. Y., 93.) The sureties must be held according to the tenor of their contract or not at all. (*Bigelow* v. *Benton*, 14 Barb., 123; *Henderson* v. *Marvin*, 31 id., 297; *Wilson* v. *Edwards*, 6 Lans., 134; *Bagley* v. *Clark*, 7 Bosw., 94; *Grant* v. *Smith*, 46 N. Y., 93; *Bonar* v. *McDonald*, 3 H. L. Cas., 226; *D. and M. Co.* v. *Lawrence*, 3 T. & C., 386.) The referee erred in rejecting the evidence offered that the sureties were informed that the bond merely referred to the first contract with plaintiff. (*Ryerss* v. *Wheeler*, 22 Wend., 148; *Forman* v. *Stebbins*, 4 Hill, 181; *Snell* v. *Snell*, 3 Abb., 426, 430; *Godfrey* v. *Warner*, Lalor's Sup., 32; *Hunt* v. *Maybee*, 7 N. Y., 266, 270.) Plaintiff could not, in any event, recover as against the sureties for any moneys retained by their principal after making his first report in July, 1871. (*Philips* v. *Foxall*, 3 L. R., 7 Q. B., 666; *Sanderson* v. *Astor*, 4 L. R., 8 Exch., 73; *Harrington* v. *First Nat. Bk.*, 1 T. & C., 361; *Burgess* v. *Eve*, L. R., 13 Eq., 450; *Hopkinson* v. *Rolt*, 9 H. L. Cas., 514.)

Miller, J. The condition of the bond in suit recited that the principal had been appointed an agent of the plaintiffs "for the purpose of procuring applications for life insur

ance and collecting premiums thereon," and provided for the payment to the plaintiff of all moneys belonging to the company and the faithful discharge of the duties of such agent. At and prior to the time of the delivery of said bond two instruments had been executed and exchanged between the parties. By one of them the plaintiff appointed De Witt W. Clinton an agent for a territory, which was designated, to procure "applications for insurances," and "to effect all kind of insurances," and provided for the payment of commissions upon "premiums and renewal premiums," and for the forwarding of applications and the payment of moneys received. By the other instrument the plaintiff agreed to allow said Clinton, as agent, a commission upon moneys collected on renewals of policies issued or negotiated through the agency of J. L. McKeever, which was to be applied towards the purchase of the said renewals. And upon payment of the sum of $1,000 the plaintiff agreed to transfer all of said renewals to Clinton, and afterwards to pay him the same commissions as were paid to McKeever.

It is objected that the bond does not include, by its terms, the moneys collected on the renewal premiums, but only such premiums as are embraced within the provisions of the first-mentioned agreement. This position is not well taken. The moneys received are not upon the applications for insurance, but for premiums upon policies and the renewals of the same. Those received upon the McKeever renewals were clearly included within the bond, for they were renewal premiums on policies, and the language of the bond covers this class of premiums as well as all others. It was not a contract of sale, but a mere agreement for a transfer of a right to collect these premiums upon certain conditions which were agreed upon. Even if the effect was, when the amount agreed upon was paid, to transfer these renewal premiums, it is difficult to see how the defendants could be injured thereby. If no transfer was to be made, and the agent had agreed to collect the premiums and pay them over, after deducting his commissions, the defendants would have been clearly liable, and it does not

affect such liability, because the agent was to pay a certain sum for the privilege of collecting these renewal premiums. Conceding the application of the rule that a claim against sureties is *strictissimi juris*, and that no implications are to be made in giving construction to the terms of a contract not clearly embraced within the *language used*, the renewal premiums mentioned in the second instrument were fairly within the import and true meaning of the bond. And even if it may be considered that there is an ambiguity in regard to the construction to be placed upon the bond, we have a right to consider, in interpreting its meaning, all the surrounding circumstances and the relations of the parties as they existed at the time of its execution and delivery. (*Griffiths* v. *Hardenbergh*, 41 N. Y., 464; *Matter of N. Y. Central R. R. Co.*, 49 id., 414.) Applying this rule to the present case, there is no ground for the assumption that the bond was intended to cover only a portion of the business which was to be transacted by the agent for the company.

Nor does it relieve the defendants from liability upon the bond, because the sureties had no knowledge of the second agreement until after the execution of the bond. Even if they were misled by the principal, at whose request the bond was executed, as to the character and extent of the obligation assumed, it is no valid defence to this action, unless it appears that the plaintiff was a party to the fraud practiced upon the defendants. (*Casoni* v. *Jerome*, 58 N. Y., 315, 321; *McWilliams* v. *Mason*, 31 id., 294.) The position that the obligee in a bond is bound to seek out the sureties and explain to them the nature and extent of their obligation at the point of losing the security, or that he is to be held responsible for the fraudulent representations or concealment of the principal of any of the facts, is somewhat novel, and is not upheld by any adjudged case. It is the duty of the sureties to look out for themselves and ascertain the nature of the obligation embraced in the undertaking, and any other rule would not only work serious inconvenience, but render securities of this character of but

little, if of any, value. The construction placed upon the bond in question does not, in my opinion, extend or enlarge the scope of the agreement beyond its actual import and the real intention of the parties.

We have been referred to a class of cases to sustain the position that the bond in question does not cover the liability incurred under the second agreement, but, after a careful examination, we are unable to discover that they sustain the doctrine contended for, as will be seen by a brief reference to the leading adjudications relied upon. In *Bigelow* v. *Benton*, (14 Barb., 123) the defendant guaranteed the shipment and delivery to the plaintiffs, by one Durkee, of a barrel of superfine flour for every four and a-half bushels (two hundred and seventy pounds) of good wheat he received from them; and a barrel of corn meal for every two hundred and forty pounds of Indian corn received from them. The contract between plaintiffs and Durkee bound Durkee to deliver a barrel of flour for a less quantity of wheat than was required by the contract of guaranty, and that the corn meal delivered should be "kiln dried." It was held that the surety was not liable. It is apparent that there was an essential difference between the two contracts, and that the latter was not contemplated by, or embraced within, the terms of the guaranty. In *Henderson* v. *Marvin* (31 Barb., 297) the guaranty was on a credit of six months, and the credit was extended as to part of the amount, and shortened as to a part, by taking a third party's promissory notes, having different times to run, and it was held that the guarantor was discharged. This was a plain variation from the terms of the guaranty, which, necessarily, rendered it inoperative. In *Wilson* v. *Edwards* (6 Lans., 134) sureties for the performance of a contract for the sale of goods on commission were held not to be liable for the payment of moneys received by the principal for goods consigned to him at an agreed price. Here, also, was a material variation of the terms of the contract which the sureties had not agreed to be liable for. In *Bagley* v. *Clarke* (7 Bosw., 94) the sureties

covenanted to be responsible for the performance of a contract which bound the principal to serve the plaintiff for a term named and no one else, at a fixed salary. This was changed into a contract making the rate of compensation depend upon the quantity of work, making the term of service uncertain, and binding the principal to obey the commands of two other persons in connection with the plaintiff.

Here was a plain and palpable departure from the original undertaking, which discharged the sureties, and the court could not hold otherwise, than that no liability existed. In *Grant* v. *Smith* (46 N. Y., 93), the guaranty was for the price of a steam engine and two boilers of a given capacity and power, and without the assent of the surety an engine with three boilers and of a greater capacity and power at an additional price was substituted. It was properly decided that this was a material change, imposing entirely new obligations upon the contracting parties and discharged the surety from any liability. It is manifest that none of the cases examined present the characteristic of the case now considered, and in each one of them there was a clear variation from the express conditions of the contract of guaranty. As we have already seen the condition of the bond in question was intended to cover and plainly comprehends the premiums mentioned in both agreements, and the claim of the plaintiff was clearly within its terms. The cases cited, therefore, have no application and furnish no grounds for reversing the judgment of the referee. It follows that the offer to show that the sureties were informed only of the first contract could have no bearing on the case, and was properly excluded.

There was no error upon the trial before the referee and the order of the General Term must be reversed and that entered upon the referee's report affirmed, with costs.

All concur.

Order reversed and judgment accordingly.