PAGE *v.* KREKEY.

*(Supreme Court, General Term, First Department.* February 18, 1892.)

1. DRUNKENNESS—VALIDITY OF CONTRACT.
   A person who, when sober, agrees to sign a contract, cannot avail himself of intoxication at the time of signature as a defense.

2. GUARANTY—FRAUDULENT PROCUREMENT—BURDEN OF PROOF.
   Where an innocent person acts upon a guaranty, the execution of which was procured by misrepresentation, the burden devolves upon the guarantor to show that he was free from negligence; the rule in such case being the same with respect to the execution of guaranties as to that of negotiable instruments.

3. EXAMINATION BEFORE TRIAL—RIGHT TO TESTIFY AT TRIAL.
   Where plaintiff's deposition was taken before trial, on defendant's application, plaintiff was entitled both to read his deposition in evidence and testify in his own behalf at the trial, under Code Civil Proc. § 882, permitting the reading of a deposition of a party taken at the instance of an adverse party, without preliminary proof of absence.

4. GUARANTY—FRAUDULENT PROCUREMENT—ADMISSIBILITY IN EVIDENCE.
   In an action on a written guaranty the reception of the same in evidence, without showing that the contents had been explained to the guarantor at the time of execution, was assigned as error. *Held,* the guarantor having previously testified that the signature was in his handwriting, and the instrument appearing to have been duly executed in other respects, that it was properly received in evidence.

5. SAME—EVIDENCE.
   In an action on a guaranty of payment for goods to be delivered, notes for the price of the goods, and an agreement between the buyer and seller as to redelivery and non-payment, are parts of the *res gestœ,* and admissible in evidence on behalf of plaintiff.

6. SAME—EVIDENCE.
   A discrepancy between such agreement and the guaranty as to the place where the goods should be redelivered by the buyer in case of failure to pay was immaterial.

Appeal from circuit court, New York county.

Action by Carroll S. Page against Joseph Krekey on a guaranty. Plaintiff was a dealer in green calfskins at Hyde Park, Vt. Bernard A. Thinnes was a drum-head manufacturer in Brooklyn, who, in order to obtain skins from plaintiff, procured from defendant, an illiterate man, by misrepresentations, a guaranty of payment therefor. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and LAWRENCE and O'BRIEN, JJ.

*Johnston & Johnston, (Edward W. S. Johnston,* of counsel,) for appellant. *Simpson, Thacher & Barnum, (Philip G. Bartlett* and *John Bennetto,* of counsel,) for respondent.

O'BRIEN, J. The action was brought upon a guaranty signed by defendant and received and acted upon by plaintiff, who shipped goods to defendant's principal while it was in force. These goods were delivered under contract which acknowledged their receipt, and provided for work upon them by the principal, with the right to become their owner upon payment of their value within the time stated, which value was fixed in the agreement. If not so purchased, they were to be redelivered to plaintiff's agents for sale. The goods were never redelivered by the principal, nor paid for by him. In addition to errors assigned as to the admission and exclusion of evidence, the substantial question presented upon this appeal arises out of the defense interposed that the defendant, who could not read, and had never had the guaranty read to him, was induced to sign the same by the false and fraudulent representations of his principal that the paper was a mere application for a license. These representations were made to the defendant while he was sober, and he admits that, relying thereupon, he agreed to sign and did sign, at the same interview, although, before the actual signature was affixed, he had several drinks, and appeared to be under the influence of liquor; but the defendant states even then he would not have signed the paper if its true contents had been make known to him. At the outset, therefore, we may entirely disregard considerations arising out of his physical and mental condition at the time of signing, produced by drink, for it is admitted that while sober he agreed to sign the paper, and that, although he drank several times before actually signing it, if he had known the contents, he would not have signed it, showing that he was sufficiently conscious, notwithstanding the drinks, to have formed a rational judgment as to whether he would sign or not. The question, therefore, remaining is as to the effect upon the validity of the guaranty of the misrepresentation of the principal to an illiterate man, such as the testimony shows the defendant was. The guaranty was properly executed, forwarded to the plaintiff, and in good faith, relying thereon, he shipped the goods to one Thinnes, defendant's principal. The testimony also tended to support the view taken upon the trial that the defendant had been deceived and misled into signing the guaranty. These facts appearing, the learned judge charged as follows: "There is a general legal proposition that the courts always enforce, and that is where one of two innocent parties has to suffer for the wrongful act of another, and where the act of one of the parties has made it possible for the injury to be inflicted; where one party does an act or neglects to do an act that makes the injury possible,—then the person who is so negligent, or who does the act that causes the injury, is to be held responsible rather than the one who is perfectly innocent, and who has done nothing in the transaction, or no affirmative act that caused the injury. Applying that rule to this case, it is very plain that plaintiff did nothing that caused the injury, and is responsible for no negligence which caused it. He relied upon the guaranty, supposing, of course, it was valid, and supposing it was signed by the person it purported to be signed by, and on the face of that he shipped the goods to defendant. The defendant signed the paper, so that what he did (his signing the paper) was the real cause of the plaintiff's

trusting defendant for the goods. The question is, should we apply the rule I have stated, so as to hold the defendant liable for the loss of the goods, because it was the act of the defendant (his signing the paper) that rendered such loss possible? And this rule should be applied if there was any act of negligence, if the defendant, in signing the paper, was at all negligent in ascertaining or trying to ascertain the contents of the paper. That is the question I am going to submit to you. The burden of proving that fact is on the defendant."

We have thus at length referred to the charge of the learned judge, because the whole case turns upon the two views taken as to the law that should be applied to the facts, and which were raised not only upon the motion to dismiss the complaint and direct a verdict for the defendant, but upon the various requests made to the court to charge the jury. The rule, as stated above, was consistently adhered to by the judge, and it remains, for the purpose of disposing of the question thus raised, to determine whether the rule thus laid down was a correct exposition of the law. Our attention has been called by appellants to some early decisions in this state, and to many from other states, in which it has been held that the burden was on the plaintiff, the defendant being unlettered, to show that the contract was read to the defendant and fully explained before such contract was executed by him. In *Trambly* v. *Ricard*, 130 Mass. 261, where the proposition thus stated was referred to with approval, the court says: "A person dealing with an illiterate man, who cannot read, and taking from him an obligation, is bound to show affirmatively that he understood the object and import of the writing sought to be enforced against him. A party who is ignorant of the contents of a written instrument from inability to read, and who signs it without intending so to do, is no more bound by it than if it were a forgery." Whatever force these cases might have had as arguments, were the rule of law unsettled and undetermined, we must, in the presence of the decisions of our own state, which are binding authorities, be controlled thereby. The rule relied upon by appellants, where the action is between the surety and principal, or where an action is brought by the obligee of a bond against the surety, with knowledge of any fraud or misrepresentation practiced upon the surety, would be applicable. But in actions in our state, where, as here, the plaintiff, in good faith, received and accepted the guaranty, without notice or knowledge of any misrepresentation or fraud practiced by the principal upon the guarantor, we take it that the rule is otherwise. In regard to commercial paper and negotiable promissory notes, the law, by a series of decisions, has been settled in this state, holding, in cases wherein it was claimed that notes were procured from the maker by false representations, whereby the maker believed the contract to be of an entirely different character, the question for the jury was as to whether or not the maker was negligent in signing the note, relying upon false representations as to the character of the instrument, and that if he was so negligent he was liable to a *bona fide* purchaser for value before maturity, and without notice. *Whitney* v. *Snyder*, 2 Lans. 477; *Chapman* v. *Rose*, 56 N. Y. 137; *Bank* v. *Veneman*, 43 Hun, 241; *Fenton* v. *Robinson*, 4 Hun, 252, etc. As stated in *Whitney* v. *Snyder, supra:* "The precise question presented here, as applied to commercial paper in the hands of a *bona fide* purchaser, etc.,   *  *  *   has   *  *  *   been presented in the case of *Foster* v. *McKinnon*, 38 Law J. (N. S.) 310, which case was fully argued and carefully considered.  *  *  *  The learned chief justice who tried the case left the jury to say whether the signature was obtained on fraudulent representation that the paper to which it was put was a guaranty, and instructed the jury that if it was so obtained, and the defendant signed it, not knowing it was a bill, and under the belief that it was a guaranty, and if he was not guilty of any negligence in writing his name on the bill without ascertaining what he was signing, he would be entitled to their verdict. This instruction

was sustained by the whole court by an elaborate opinion delivered by BYLES, J. We are satisfied with the reasoning of the court in that case, and we think any other rule would be fraught with great danger to the security of property." While it may be conceded, therefore, that the law is settled as regards negotiable instruments, it is claimed that a different rule prevails, and should be applied to non-negotiable instruments, such as a bond of guaranty. The grounds of such distinction have not been pointed out, nor have we been referred to any authority which would sustain the view that any modification of the law, as applied to negotiable instruments, should be applied to other instruments in writing. In Baylies on Sureties & Guarantors, at page 214, it is stated: "It is the general rule that fraud vitiates all contracts, and contracts of guaranty and suretyship form no exception. But the fraud which will vitiate a contract of suretyship must be one to which the person benefited by the contract is a party, or at least of which he had notice. Wherever there is any misrepresentation, or even concealment from the surety of any material fact, which, if disclosed, might have prevented him from entering into the contract of suretyship, it will render it invalid, and a surety will not be liable. But the obligee is not bound to seek out the sureties and explain to them the nature and extent of their obligation at the point of losing the security, nor is he to be held responsible for the fraudulent representations or concealment of the principal of any of the facts. It is the duty of the sureties to look out for themselves and ascertain the nature of the obligations embraced in the undertaking, and any other rule would not only work serious inconvenience, but render securities of this character of but little, if any, value." See same language used in *Insurance Co.* v. *Clinton*, 66 N. Y. 326. The case, however, which more nearly resembles this than any we have been able to find in this state is that of *McWilliams* v. *Mason*, 31 N. Y. 294. That was an action brought upon a guaranty for the payment of a bond, and the defense was that the guaranty was executed, relying upon certain representations of the principal which were false. As stated in that case: "It is the law that the rights of a surety are *strictissimi juris.* * * * The real question is, which of two innocent parties shall suffer by a fraud perpetrated by another? * * * But it turns out, when the guaranty was sought to be enforced, that the defendant was induced to make it by a false representation as to the consideration. * * * This is no defense, because in such actions the law imposes the loss upon the party who, by his misplaced confidence, has enabled another, on the faith of his obligation, to obtain money or property of a third person, who has dealt in good faith, relying on such obligation. The doctrine of estoppel steps in to prevent the assertion of such a defense, because it is more consonant with public policy, as well as sound morals, that he who, by permitting himself to be deceived, has put it in the power of another to defraud an innocent third party, should himself suffer rather than the third party."

Appellant, however, insists further that the defendant's physical inability, by reason of his illiteracy, to read or understand the contents of the instrument, presents an additional reason why this rule should not be applied. We do not think, however, there can be any real difference between cases where one cannot read an instrument and the cases, many of which are given in the books, where persons innocently affix their names to papers above which nothing was written, and where subsequently obligations were written in to which they were bound. In the latter cases, the fact that they were educated, or could read, in no way would help them, because the opportunity of reading was not afforded, and yet, in these cases, it was held that a liability ensued; so in the case of notes, where the amount has been left blank, and subsequently a much larger sum than was agreed upon by the parties has been inserted. Here the opportunity of examination or reading the contents was wanting. We are of opinion, upon an examination of the cases, all of which

cannot be reconciled, that the better view seems to be that where an inno-
cent party has acted, as in this case, upon a guaranty, signed, it is true,
under misrepresentation, to relieve himself from responsibility thereon he
must show that he was free from negligence. This was the exact ruling of
the learned court upon the trial, and our assent thereto disposes of all the
exceptions in the case predicated upon an opposite view of the law.

There remains, however, briefly to consider some of the exceptions taken
to the rulings of the court upon evidence.

The first exception relates to the reading, upon the trial, of the deposition
of the plaintiff taken upon defendant's application before trial. Subsequently
to the reading plaintiff was present, and testified in his own behalf. The
exception to the allowance of the reading of the deposition without proving
that the person was unable to attend is not good, for the reason that section
882 permits, without such preliminary proof of absence, etc., the reading of
a deposition of a party taken at the instance of an adverse party.

The second exception relates to the reception of the guaranty in evidence,
which was objected to on the ground that the defendant, who was a witness,
being illiterate, the burden was upon the plaintiff, and it was necessary for
him to show that the contents of the paper purporting to be subscribed by
the defendant were made known to him before he delivered it. It will be
seen, however, that, before being allowed in evidence, the witness, in answer
to a question, testified that the signature thereto was in his handwriting, and,
in other respects appearing to have been duly and regularly executed, it was
properly received. The question as to the burden of proof has already been
considered in the prior discussion of the principal question of law presented.

The next exception relates to the introduction in evidence of the agree-
ments between the plaintiff and Thinnes subsequent to the guaranty. The
agreements and notes also offered seem to us to have been properly received,
being admissible as acts or admissions of the principal, establishing the re-
ceipt of the skins, the terms on which received, and the time of the option,
and the value. They were part of the *res gestœ*, and therefore admissible.
The discrepancy between these agreements and the guaranty as to the place
where Thinnes, upon failure to pay, should deliver them, was not so mate-
rial or vital as to prevent the introduction of the agreements themselves, or
uphold the validity of the guaranty. Redelivery to either Rose, McAlpin
& Co., the parties named in the guaranty, or Myers & Gordon, the per-
sons named in these agreements, introduced in evidence, or to any accepted
agent of the plaintiff, would have discharged the guaranty. The introduc-
tion of a new name was therefore immaterial. When the guaranty was made,
there was no principal contract. When one was made it fell wholly within
the scope of the transaction authorized by the guaranty, and the principle of
discharge by alteration has no application.

The next exception relates to the exclusion of certain questions asked by
the defendant as to what was said between Thinnes, the defendant, McKen-
zie, and some others, at an interview long subsequent to the signing of the
guaranty by defendant. It is true, the plaintiff was permitted to show part
of the conversation between the parties, which was entirely immaterial and
irrelevant, and not binding upon any of the parties, and exception to which
would have been good were it not evident from the case that the learned
judge reached this conclusion and determined to keep out of the case this irrel-
evant testimony, and in his charge to the jury expressly told them that such
testimony, in reaching a determination, should be entirely disregarded, thus
obviating any harm that otherwise might have flowed from permitting plain-
tiff to testify as to part and refusing the defendant an opportunity to give
the balance of the entire conversation between guarantor and principal.

The sixth exception relates to the exclusion by the learned judge of ques-
tions put to witnesses for the defendant, in form as follows: "*Question.* Have

you any knowledge on the subject of whether Mr. Krekey can read or write?" If the question was in dispute, it would have been error to have excluded the answer to these questions, and it would have been entirely competent for witnesses to have answered whether they had or had not knowledge, as properly introductory to eliciting facts about the extent and character of their knowledge. Such evidence, however, was merely cumulative, because defendant's own testimony was uncontradicted, and at the close of the case it was assumed that the defendant was illiterate, and the sole and only question presented to the jury was, assuming his illiteracy, whether he was guilty of negligence. This single question presented also disposes of many other errors assigned by plaintiff in regard to the refusal to submit the question of plaintiff's negligence to the jury, and also in reference to the goods delivered to Thinnes. There was no testimony to raise any conflict upon these questions, and there was therefore nothing in reference thereto to submit to the jury. In the absence of conflicting testimony, the court practically determined that the plaintiff was not guilty of negligence, that the defendant was illiterate, and therefore only presented the questions whether he had been induced to sign by false representations, which depended upon the truth of defendant's story, and as to whether he was free from negligence. These were the only questions necessary or that were submitted to the jury. In regard to the negligence it is further insisted by appellant that to create an estoppel it must be culpable and gross, and therefore that the court erred in not so charging. We do not understand, however, that the principle in regard to the degree of negligence, in order to charge one who claims to have been induced to sign an instrument by misrepresentation, is as strict or goes to the extent as claimed by appellants, as already shown by the case of *Whitney* v. *Snyder,* wherein the charge of the lord chief justice in the English case was quoted at length, assented to, and approved. Without reviewing the other grounds relied upon which have been examined, we are of opinion that the judgment appealed should be affirmed, with costs. All concur.