DUNFEE et al. v. DUNFEE et al.

(Supreme Court, Appellate Division, Fourth Department. May 3, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 287*)—PAYMENT OF CLAIM—REFUNDING BONDS—SUFFICIENCY.

The executors of a contractor paid the profits of a contract to his nephew, who claimed them, taking a bond to secure payment of any claims against the estate arising from the contract. *Held,* that the bond was sufficient to protect the estate against a judgment for personal injury caused in performing the contract, though that claim was not mentioned in the bond.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1134; Dec. Dig. § 287.*]

2. PRINCIPAL AND SURETY (§ 41*)—MISREPRESENTATIONS TO SURETY—EFFECT AS TO OBLIGEE.

Deception of a surety by the principal is not imputable to the obligee unless the obligee participated in or knew of the fraud.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 78–81; Dec. Dig. § 41.*]

3. EXECUTORS AND ADMINISTRATORS (§ 287*)—PAYMENT OF CLAIM—SUIT ON REFUNDING BOND—PROOF REQUIRED.

Executors suing on a bond taken from decedent's nephew, on paying him the profits of a contract claimed to have been performed by decedent for the nephew's benefit, were not bound to prove validity of the nephew's claim as strictly as he would have to in suing to recover of the executors.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 287.*]

4. DISCOVERY (§ 31*)—EXAMINATION BEFORE TRIAL—REFUSAL—JUDICIAL DISCRETION.

It was not an abuse of discretion to refuse an examination of plaintiffs and a codefendant before trial, where the action had been long at issue, and an examination would have prevented trial at the term then in progress.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 45; Dec. Dig. § 31.*]

Appeal from Trial Term, Onondaga County.

Action by Anna Dunfee and another, John Dunfee's executors, against Joseph Dunfee and another. From a judgment for plaintiffs, and from orders denying a new trial, examination of its codefendant, and a postponement, defendant the Empire State Surety Company appeals. Affirmed.

The action is on a bond executed by the defendant Joseph Dunfee, as principal, and the appellant, a surety company, as surety. The an-

swer of the surety company, after denials, alleges as an affirmative defense that the giving of the bond in suit was procured by means of the fraud and conspiracy of the plaintiffs and the defendant Joseph Dunfee, who has not answered in the action.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Benjamin Reass, for appellant.

John W. Hogan, for respondents.

SPRING, J. In September, 1904, the Central New York Telephone & Telegraph Company entered into a written agreement with John Dunfee of Syracuse, the testator of the plaintiffs, whereby he agreed "to build a system of underground conduits and manholes in the streets of the city of Syracuse," according to the specifications which formed a part of the agreement. The contractor agreed to furnish the tools, machinery, etc., essential to the prosecution of the work, "and to guard and protect the trench and all excavations at all times against accidents, and be responsible for any accidents or injury which may occur."

During the progress of the work, and on the 24th of September, 1904, one Florence Ryan fell in an unguarded trench or excavation made at the intersection of Montgomery and Jefferson streets in said city by said contractor, and was seriously injured. On October 5th, following, she commenced an action against both parties to said agreement to recover damages for the injuries sustained by her. Dunfee died December 24th, and at that time the agreement was substantially performed. He left a last will and testament, which was duly admitted to probate, and letters testamentary issued thereon to the plaintiffs in January, 1905, by the surrogate of the county of Onondaga. The telephone company early in April served upon the plaintiffs a notice of the pendency of said action commenced by Florence Ryan, calling attention to the clause mentioned in the agreement with Dunfee and requesting the executors to defend such action, and a notice of claim was also presented by said company to said executors, accompanied by a copy of the summons and complaint in said action. The plaintiff in that action recovered a verdict of $20,000, which was reduced to $15,000, and judgment entered for $15,501.76 on the 9th of June, 1906. The judgment was finally affirmed by the Court of Appeals on March 22, 1909, and was paid by the telephone company. On April 29, 1909, the telephone company commenced an action against the plaintiff and recovered judgment for $19,993.81 and an execution was duly issued thereon, and the plaintiffs paid in satisfaction thereof the sum of $20,810.88. The defendants here had adequate and reasonable notice of the nature and pendency of said action and were requested and demanded to defend the same.

John Dunfee was a man of affairs engaged extensively in the performance of work requiring earth excavation. He had several independent deposit accounts in the State Bank of Syracuse. His account in connection with the performance of the agreement with the telephone company was kept by itself as that of "John Dunfee & Co.,

Subway," although he had no partner in the enterprise. On the 20th of December, 1904, he was paid on account of said contract $23,-006.35, which was deposited to the credit of said account, making the same $25,558.13; and after his death the account was kept intact until May 29, 1906.

The defendant, Joseph Dunfee, a nephew of John, had taken charge to some extent at least of the contract work referred to, and claimed he was entitled to the profits of the business, and frequently demanded of the executors the payment over of the money in the "Dunfee & Co., Subway," account on the ground that it belonged to him.

The depositions of the two executors were taken before trial in pursuance of an order of the justice sitting at the Trial Term granted upon the application of the surety company and were read upon the trial in its behalf. Mrs. Dunfee, the widow and executrix, in response to the questions of the counsel for the defendant, testified:

"The conversation I had with my husband with respect to Joseph Dunfee and this contract was he said he took this contract for Joseph Dunfee so as to put him on his feet, and whatever proceeds there were from it after all claims and everything against it was paid was to be turned over to him. He told me that. Along very early in the fall, when he first took the contract, he spoke of it first, and then he spoke of it several times, and said he was very glad that it was going to be quite a little money for Mr. Dunfee when the contract was finished; of course, that was after all claims were paid. He said he took this contract for Joseph Dunfee, and that he was going to give Joseph Dunfee the profits of this contract after all claims were paid. He did say the same thing to me afterwards."

And further she testified that her husband talked with her several, "possibly five or ten," times on this subject, calling attention to the fact that Joseph "had been unfortunate in many transactions," and that these conversations continued until within ten days of the death of her husband. He referred to the Ryan claim, stating that the profits inuring to Joseph were likely to be diminished by reason of that demand. Mr. Cummins also in his deposition stated, in response to inquiries made by the counsel for the surety company, that Mr. John Dunfee had told him that Joseph was to do the work in connection with the telephone company contract and was to have the profits accruing therefrom.

The money arising from the telephone contract was retained in the bank to await the final decision in the Ryan Case. When Joseph Dunfee became insistent upon the recognition of his claim by payment over of the money, the executors promised to comply with his request providing he would give them a bond of indemnity which should be satisfactory to Mr. Hogan, their counsel. Thereupon Joseph Dunfee made a written application to the defendant surety company on the 14th of May, 1906, for such a bond in the sum of $27,000, which was subsequently approved by the appellant, and the bond in suit was given, which was principally prepared by the attorney for the executors. The only purpose of the bond was to protect the executors in the payment of this money to Joseph Dunfee, and the particular reason for its requirement was to indemnify them against their ultimate liability arising from the Ryan claim or judgment. Both Mrs. Dunfee and Mr. Cummins testified that their apprehension of this

claim was the substantial ground of their refusal to pay Joseph the net avails of the subway contract.

In interpreting the bond it is essential to keep this proposition in view, for the liability of the surety depends upon the instrument illumined by the circumstances which induced it (Western N. Y. Life Ins. Co. v. Clinton et al., 66 N. Y. 326); and it is to be measured and determined no differently than "that of a principal or other party sustaining a different relation" (Ulster County Savings Inst. v. Young, 161 N. Y. 23, 30, 55 N. E. 483, 484).

It is recited in the bond that the money on deposit from the subway contract is to the credit of John Dunfee, and that Joseph Dunfee claims to own it and desires it paid to him. The conditional clauses in the bond read as follows:

"Now, therefore, the condition of this obligation is such that if the executors of the last will and testament of John Dunfee, deceased, the obligees in this bond named, shall advance to said Joseph Dunfee from said money on deposit, as aforesaid, the sum of twenty-seven thousand dollars, or any part thereof, that the said Joseph Dunfee shall pay any and all claims of every name and nature outstanding by reason of the construction of said work and any and all sums which exist or may be established as a liability against the estate of John Dunfee, deceased, by reason of said contract, or any liability by reason of the bond signed by said John Dunfee accompanying the said contract, or any liability that may be hereafter established against the estate of John Dunfee by reason thereof or connected therewith, or arising therefrom, or against said Anna Dunfee and John J. Cummins as executrix and executor, or individually, by reason of said advancement; and further, that in the event of any determination that any of said moneys so advanced belongs to the estate of John Dunfee and not to Joseph Dunfee, then that said Joseph Dunfee shall refund the same and save said obligees and executors, both as executors and individually, harmless by reason of such advancement, then this obligation to be void, otherwise to remain in full force and effect.

"It being understood, however, that the advancement of said money shall in no wise be construed as a concession of the ownership of said fund in said Joseph Dunfee, or any waiver of right of claim to same by said obligees, and in the event that upon the accounting of said executors it should be determined that said money belongs to the estate of John Dunfee, deceased, then said accounting and determination shall be conclusive as against the surety herein and fix the liability of the surety hereunder."

In the light of the facts detailed, these conditions of the bond seem plain and unambiguous. Joseph Dunfee wanted this money. The executors were satisfied of the genuineness of his claim. They realized that the fund might be very largely depleted by reason of their liability to be made to respond to the Ryan claim. The final determination of that action might not be reached in several years. Joseph did not wish to await until its determination before receiving the money, and the executors were willing to accede to his demand if they were adequately guaranteed the repayment of the money, or so much as might be necessary to save them from loss, if any resulted.

Nor does the second clause quoted impair the effect of the previous condition. The bond was prepared for the purpose of indemnifying the plaintiffs against loss from two or three contingencies which might be expected to occur. Primarily, as already noted, protection was intended from loss arising by reason of damages resulting from the performance of the telephone contract by Dunfee, a concrete instance of which confronted the executors in the verdict of Florence Ryan. In-

the second place, the sum on deposit representing the profits of that contract exceeded the amount of the Ryan verdict by several thousand dollars. All of this, in pursuance of the promise to Joseph Dunfee, was to be turned over to him upon the acceptance of the indemnity bond, and the terms of the bond unmistakably disclose that the payment of this fund was to be made, and that the bond was designed to save the executors harmless on account of such payment. The amount is stated to be $27,000, and that it is "claimed to be owned by Joseph Dunfee," and is to be advanced to him. If the Ryan claim should be upheld and on an accounting the difference between it and the amount paid over should be determined to belong to the estate of John Dunfee, deceased, and the executors, therefore, be charged with this overpayment, they provided for that not unlikely contingency. In the event that the Ryan judgment should be reversed and the action fail, another condition of affairs would be presented which might be fraught with disastrous consequences to the plaintiffs unless they were guaranteed from loss occurring because of any such determination. Upon the judicial settlement of their accounts the beneficiaries of the will of John Dunfee might test the validity of the payment to Joseph, and, if denied, the account might be surcharged with this sum. A determination of this kind was provided for, and for Dunfee's refunding the money, and that the advancement should not establish ownership in Dunfee as against the executors, and the sureties should be concluded by the determination. There were no inconsistencies in the bond. It was prepared carefully to save the plaintiffs harmless, and was intended to be effective for that purpose, forecasting any situation which might be expected to develop.

[1] Complaint is made because the Ryan claim is not specifically mentioned. The criticism might be tenable if the payment of that claim was the only matter covered by the bond. It did refer to the construction contract and the liability of John Dunfee for damages suffered during the prosecution of the work. The attention of the appellant was, therefore, definitely called to this contract, which was readily accessible to it. In the application of Joseph Dunfee for the bond, he gave, among his references, the name of Mr. Nicholson, the general manager in the city of Syracuse of the telephone company. No inquiry in behalf of the appellant was made of him as to the Dunfee contract, although he was the man who might be expected to know its contents and the nature of John Dunfee's liability, which was further assured by a bond to the telephone company. Mr. Wood, the Syracuse representative of the surety company, was a lawyer residing in that city and must have known of the verdict in the Ryan action. A verdict of that magnitude in the county of Onondaga, it is fair to assume, would attract the notice of a resident lawyer. It seems therefore clear that no concealment of the Ryan claim was intended by the plaintiffs, and there was none in fact.

Mr. Wood testified to conversations with Mr. Cummins, antecedent to the giving of the bond, in regard to the reason for requiring it, and as to the responsibility of Joseph Dunfee, which tend to show misstatements and misrepresentations. Mr. Cummins denied he ever had any conversations with a representative of the surety company. The

disputed question of fact was submitted to the jury, and the verdict settled the controversy in favor of the plaintiffs.

[2] Mr. Wood also testified to false representations made by Joseph Dunfee. The deception which might have been practiced by Joseph Dunfee is not to be imputed to the plaintiffs, unless they participated in or had cognizance of the fraud, or unless the conspiracy charged in the complaint between the plaintiffs and Joseph Dunfee has been established. Powers v. Clarke, 127 N. Y. 417, 422, et seq., 28 N. E. 402; Western N. Y. Life Ins. Co. v. Clinton et al., 66 N. Y. 326, 331.

There are other circumstances which are urged, and it seems to me magnified unduly, in order to fasten the charge of fraud upon these plaintiffs. They narrated, apparently fully and without reservation, all the facts leading up to the execution of the bond in suit and while testifying on behalf of the appellant. Their story is confirmed by the terms of the bond, and whatever disputed question of fact arose was fairly submitted to the jury and disposed of by the verdict.

[3] The plaintiffs were not required to establish the validity of the claim of Joseph Dunfee to this money on deposit with the same verity as he would be called upon to do in an action to recover of the executors. It is clear that Joseph made a claim to this fund, and the executors' belief in its genuineness was fortified by the statements of John Dunfee. It was not, therefore, a demand without any foundation. The defendant gave the bond with knowledge of the claim, and it, if any one, was remiss in failing to examine as to its validity. The surety company evidently relied upon the financial responsibility of Joseph Dunfee and were willing to give the bond, expecting the principal would be able to respond, and there is very little proof to show his inability to repay the sum he received.

Beyond everything else, it is to be observed that the recovery in this case is confined to the amount of the Ryan claim, with interest thereon. In any event, that was a liability against the plaintiffs by reason of the contract of their testator with the telephone company, and the bond in controversy was intended to indemnify the plaintiffs against that payment.

[4] Joseph Dunfee was produced as a witness for the appellants, but the examination did not extend to the question of the representations, which, it is claimed, he made, or to any of the vital issues in controversy. On the 3d of October, 1910, an application was made by the appellants to the justice sitting at the Trial Term in the county of Onondaga for a postponement of the trial, which was denied. An order was granted upon its motion on the 7th of October for an order for the examination before trial of the plaintiffs and Joseph Dunfee, and the examination was ordered before a referee on the 13th of October, 1910; the depositions to be taken and filed within 10 days. The justice presiding at the trial modified this order, both parties appearing, by requiring the examination to be had before him at chambers October 15th, and limiting its scope. The Trial Term was in progress, and, if the original order remained, the trial of the case would not have proceeded at the ensuing term. Joseph Dunfee was absent from the city and was not served with the modified order. On the day preceding the trial, another application for the examination of Joseph

Dunfee was made, which was denied; and these last two orders are appealed from. I think the judge in the disposition of these applications properly exercised his discretion. The action had long been at issue, and the defendant should not have deferred the attempt to secure the deposition of Dunfee until the time of trial.

The judgment and orders should be affirmed.

Judgment and orders affirmed, with costs. All concur.